**FILED**
**Apr 28, 2021**
**09:49 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **GILES COLE,** | ) | **Docket No. 2016-08-0935** |
| **Employee,** | ) | |
| **v.** | ) | |
| **YRC, INC.,** | ) | **State File No. 63710-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **OLD REPUBLIC INS. CO.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

## COMPENSATION ORDER FOR MEDICAL BENEFITS

This case came before the Court on March 31, 2021, for a Compensation Hearing. Mr. Cole requested benefits for injuries to his head and back that he related to a September 23, 2015 accident. YRC contended the alleged injuries were not work-related. For the following reasons, the Court holds Mr. Cole is entitled to future medical benefits for his head injury but no other workers' compensation benefits.

### History of Claim

Mr. Cole worked for YRC as a truck driver. On September 23, 2015, he was involved in an accident when his truck rolled over. YRC accepted the claim and provided medical benefits, including a panel from which Mr. Cole selected Dr. Bonnie Randolph.

Dr. Randolph, an occupational medicine physician, first saw Mr. Cole the day after the accident. Mr. Cole complained of pain in his head and right hand, and Dr. Randolph noted contusions to those body parts. In addition to the contusions, Dr. Randolph diagnosed a concussion with no loss of consciousness. She recommended a CT scan of his head, which was normal.

1

At each of four later visits, Dr. Randolph maintained her diagnosis and, because of Mr. Cole's persistent complaints of headaches, recommended an MRI and a neurology referral. The MRI showed sinusitis, cerebral atrophy, and small vessel disease of the brain. Based on those findings, Dr. Randolph discontinued the neurology referral but instead told Mr. Cole to see his primary care physician for the sinusitis. In Dr. Randolph's opinion, sinusitis was "most likely" causing his headaches, and she released him at maximum medical improvement on November 20.

Mr. Cole followed Dr. Randolph's advice and saw his primary care physician, Dr. Oliver Hardy, in December. Dr. Hardy noted a laceration on Mr. Cole's head and diagnosed "post-concussion syndrome." Over the next two months, Dr. Hardy added diagnoses of sleep apnea, a hernia, insomnia, and hyperlipidemia. Dr. Hardy restricted Mr. Cole from work but did not indicate any causal relationship between the restriction and the accident.

Representing himself, Mr. Cole requested an Expedited Hearing where he claimed injuries to his head, back, and legs. He asked that the Court order YRC to pay Dr. Hardy's bills, contending that he saw him only because YRC stopped paying Dr. Randolph; however, he offered no proof of the amount of the bills. He wanted temporary disability benefits because Dr. Hardy restricted him from work, but he offered no proof of a causal relationship between that restriction and the accident. Mr. Cole also conceded during cross-examination that not all of his problems were related to the accident. YRC provided evidence through Kevin English, its claims handler, that it never refused to authorize Dr. Randolph to treat Mr. Cole or to pay her bills.

Based on that evidence, the Court held Mr. Cole likely would not prevail at a hearing on the merits because Dr. Randolph did not relate Mr. Cole's headaches to the accident. Because she was the panel-selected physician, her unrebutted opinion was presumed correct. *See* Tenn. Code Ann. § 50-6-102(14)(E) (2020).

After the denial, Mr. Cole obtained counsel, who later non-suited the case. After refiling, the parties obtained medical proof and proceeded to this Compensation Hearing.

In support of his position, Mr. Cole introduced the deposition of Dr. Samuel Chung, a physical medicine specialist and board-certified independent medical examiner. Dr. Chung reviewed the records of Dr. Hardy and providers to whom Dr. Hardy referred Mr. Cole for testing. Dr. Chung did not review records from Dr. Randolph or Campbell Clinic Orthopedics.

At an August 16, 2018 office visit, Mr. Cole told Dr. Chung that he injured the "top of his head and lower back" in the accident. Regarding the head injury, he told Dr. Chung he experienced significant headaches in the area where he struck his head. He stated he experienced memory loss, difficulty concentrating and dizziness. Mr. Cole said he still had

2

problems with short term memory, and Dr. Chung described his problem-solving and concentration as "still somewhat delayed and affected."

Dr. Chung performed a battery of tests to evaluate Mr. Cole's mental status. Based on the testing, Dr. Chung said Mr. Cole exhibited mild cognitive impairment, which Dr. Chung related to the concussion and assigned a five-percent whole-person impairment.

As to the back injury, Dr. Chung performed a complete physical evaluation, which indicated an ongoing right lumbar radiculopathy. He explained the accident aggravated Mr. Cole's degenerative back conditions and caused him to suffer a twelve-percent impairment to the body.

Dr. Hardy, Mr. Cole's primary care physician, died before the parties could depose him, but the parties offered his records. As relevant here, the records included complaints of low-back pain beginning in late 2016 and described by the doctor as degenerative, consistent with the findings of a lumbar MRI he recommended. Additionally, a letter to Mr. Cole's counsel indicated Mr. Cole initially exhibited symptoms of disorientation, dizziness, and problems with memory and concentration, but that they "resolved over time." Dr. Hardy "suggest[ed] appealing his case [apparently referencing the expedited hearing order], as there certainly should not be any denial of the accident sustained concussion [.]"

The parties also offered the records of Campbell Clinic Orthopedics. Those dealt primarily with an unrelated knee injury but also included an August 8, 2016 note stating Mr. Cole complained of low-back pain beginning in the "last couple of months" and without any traumatic event. Multiple notes regarding the evaluation of his back pain did not mention the accident, but instead the providers recorded degenerative problems of the lumbar spine. The records noted that Mr. Cole was alert and oriented on multiple visits.

For its medical proof, YRC introduced the deposition of Dr. Randolph. She confirmed he reported only head and right-hand pain on the day after the accident. Otherwise, Dr. Randolph's "review of systems" was completely negative, including no dizziness, forgetfulness, confusion, mood change or any musculoskeletal findings. Dr. Randolph said Mr. Cole could return to work without restrictions as of the first visit, a status she maintained throughout her course of treatment. She explained the later visits as described in her records. Dr. Randolph found Mr. Cole suffered no permanent impairment but testified he could return if needed.

YRC also offered the deposition of Dr. Fereidoon Parsioon, a neurosurgeon, who evaluated Mr. Cole twice at YRC's request. First, on November 15, 2018, Dr. Parsioon concentrated on the head injury. He took a history of the accident, noting that Mr. Cole said he did not lose consciousness, but he still complained of daily headaches. His

neurological examination was normal. Dr. Parsioon noted that Mr. Cole did not report memory loss or disorientation to either Dr. Randolph or Dr. Hardy. Dr. Parsioon believed any headaches from the accident should have resolved and that they "could very well be related to sinusitis." However, he did say Mr. Cole likely suffered a "minor to mild" head injury in the accident, and he agreed with Dr. Randolph that Mr. Cole reached maximum medical improvement on November 20, 2015, with no impairment.

Dr. Parsioon's second visit with Mr. Cole on July 19, 2020, concentrated on the back injury. In that regard, Mr. Cole told Dr. Parsioon he had no prior back problems. Conversely, Dr. Parsioon testified that Campbell Clinic records from 2014 noted a history of back pain; thus, he called Mr. Cole's statement that he had no previous problems "false." Based on his record review, Dr. Parsioon characterized Mr. Cole's back complaints as chronic and unrelated to the accident. He assessed no impairment.

At the Compensation Hearing, Mr. Cole testified he struck his right side when the truck turned over, injuring his head, back and neck. However, on cross-examination, Mr. Cole said he did not recall when his back started hurting. Nevertheless, he claimed he had no prior problems with headaches, concentration, or his back before the accident. As to his current condition, Mr. Cole stated he could no longer drive a truck, a job he did for thirty years, and he understood that Dr. Hardy said he could no longer drive. Mr. Cole said he has trouble sleeping, and he cannot lift anything or perform tasks around his house. He still has pain in his knees and back and used a walker in the courtroom.

Mr. Cole claimed Dr. Hardy restricted him from work and relied on that opinion for his demand for temporary total disability. However, he did not articulate the exact timeframe requested. As to permanent disability, Mr. Cole claimed he was totally disabled or, alternatively, that he should receive the impairment assessed by Dr. Chung.

Mr. English testified that YRC authorized Dr. Randolph and paid all of her bills.

**Findings of Fact and Conclusions of Law**

At a Compensation Hearing, Mr. Cole must establish all elements of his case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2020). Specifically, he must show that his alleged injuries resulted from a specific incident, and they arose primarily out of his employment. The injuries arise primarily out of the employment only if Mr. Cole shows, to a reasonable degree of medical certainty, that the incident contributed more than fifty percent in causing them. "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physicians, the injuries were more likely than not caused by the incident when considering all causes. Tenn. Code Ann. § 50-6-102(14)(A)-(D).

4

Here, Mr. Cole established a specific incident occurred on September 23, 2015. However, the dispositive question is whether his alleged head and back injuries arose primarily out of his employment and, if they did, whether they caused any disability, temporary or permanent. The Court will address the two alleged injuries in turn.

*Head injury*

Mr. Cole relied upon Dr. Chung's opinions; YRC on Drs. Randolph and Parsioon. To determine which opinion is correct, the Court may consider the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by the other experts. *Smith v. TrustPoint Hospital, LLC*, 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *19 (Jan. 6, 2021). Because Dr. Randolph was the panel physician, her opinions are afforded a presumption of correctness subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-204(k)(7).

First, as to qualifications, the Court considers Drs. Chung and Randolph on equal footing. Dr. Chung is a board-certified, independent medical examiner who specializes in physical medicine, and Dr. Randolph was practicing occupational medicine at the time she treated Mr. Cole. In contrast, Dr. Parsioon is a neurosurgeon who specializes in the treatment of brain injuries and the central nervous system. Given his specialty, the Court finds the qualifications of Dr. Parsioon superior to the other experts.

Second, as to the circumstances of their evaluations, both Drs. Chung and Parsioon evaluated Mr. Cole for purposes of litigation three years after the accident; thus, their opinions are afforded equal weight. Conversely, Dr. Randolph saw Mr. Cole immediately after the accident and provided treatment on several occasions. Thus, the Court finds this factor supports Dr. Randolph.

Third, the Court looks to the information available to the experts. In that regard, all three took a history of the accident, knew of the CT and MRI results, and examined him. These facts elevate none of the experts above the others. However, Dr. Randolph saw Mr. Cole shortly after the accident, which allowed her to assess his condition in the immediate aftermath. Thus, the Court finds this factor supports Dr. Randolph.

Finally, the importance of the information available to the experts supports Dr. Parsioon. He explained the head injury in the most convincing way. Namely, he noted that Mr. Cole did not report problems with memory or disorientation to either Dr. Randolph or Dr. Hardy. Likewise, Dr. Parsioon found none of the problems recorded by Dr. Chung. The Court notes the Campbell Clinic records also documented normal alertness and orientation. In short, Dr. Parsioon ultimately described Mr. Cole's head injury as minor and that it caused no permanent impairment.

Taking the evidence in totality, the Court finds Mr. Cole sustained a concussion as a result of the accident. Dr. Randolph found he did, and the proof does not rebut that opinion. Dr. Chung agreed, and Dr. Hardy also diagnosed post-concussion syndrome. Dr. Parsioon agreed Mr. Cole sustained a mild head injury.

However, as to impairment, Dr. Randolph assessed none, and Dr. Parsioon agreed. As Dr. Randolph is presumed correct, and Dr. Parsioon corroborated her opinion, the Court finds Mr. Cole did not rebut those impairment opinions through Dr. Chung and holds he sustained no permanent disability due to the head injury. *See* Tenn. Code Ann. § 50-6-204(k)(7).

Although the head injury caused no impairment, YRC remains responsible for future medical treatment of it. Tenn. Code Ann. § 50-6-204(b)(1); *Barron v. State Dep't of Human Servs.*, 184 S.W.3d 219, 223 (Tenn. 2006); *Stephens v. Henley's Supply & Indus., Inc.*, 2 S.W.3d 178, 179-180 (Tenn. 1999). Dr. Randolph shall remain Mr. Cole's authorized physician for his head injury.

As to temporary total disability, Mr. Cole must show 1) he became disabled from working due to a compensable injury; (2) a causal connection between the injury and his inability to work; and (3) the duration of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Here, Mr. Cole contended he should receive temporary disability benefits for the period that Dr. Hardy restricted him. However, the exact time frame was unclear from the records and, moreover, Dr. Hardy's records do not establish a causal connection to the accident by a preponderance of the evidence when considering all of the expert opinions. Thus, the Court cannot award these benefits due to the head injury.

*Back injury*

The back injury is more straightforward. Dr. Randolph noted no history of a back injury when she saw Mr. Cole immediately after the accident. Neither did Dr. Hardy one month later. The 2014 Campbell Clinic record alluded to by Dr. Parsioon is not in the indexed records offered by the parties. However, a Campbell Clinic note dated August 8, 2016, records that Mr. Cole complained of low-back pain beginning in the "last couple of months," long after the accident, and further that he denied any traumatic event. Doctors there later diagnosed degenerative changes, consistent with Dr. Parsioon's opinion that the back problems were chronic. Thus, the Court finds the evidence preponderates against a finding that the alleged back injury is causally related to the accident and denies Mr. Cole's request for any workers' compensation benefits because of it.

**IT IS, THEREFORE, ORDERED** as follows:

6

1. The Court denies Mr. Cole's request for disability benefits.

2. YRC shall provide Mr. Cole future medical benefits under Tennessee Code Annotated section 50-6-204 (a)(1)(A) for the September 23, 2015 concussion.

3. YRC shall pay the $150.00 filing fee to the Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019).

4. YRC shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

5. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED April 28, 2021.**


_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**


### APPENDIX

Exhibits:
1. Deposition of Dr. Samuel Chung
2. Deposition of Dr. Fereidoon Parsioon
3. Deposition of Dr. Bonnie Randolph
4. Collective Medical Records
5. Transcript excerpt from Expedited Hearing
6. C-42 Choice of Physician Forms
7. Wikipedia article re: "Sinusitis" (Identification only)
8. Healthline article re: Allergy-induced Vertigo (Identification only)
9. PubMed article re: Vertigo from Inflammation of Sinuses (Identification only)
10. Ashford Clinic article re: Dizziness and Your Sinuses (Identification only)


Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice-March 1, 2018
3. Request for Scheduling Hearing

4. Scheduling Order
5. Motion to Continue Compensation Hearing-July 20, 2018
6. Employer's Response to Motion to Continue
7. Order of Continuance
8. Second Scheduling Order-January 6, 2021
9. Post-Discovery Dispute Certification Notice
10. Pre-Compensation Hearing Statement
11. YRC's Trial Brief
12. YRC's Witness and Exhibit List
13. Mr. Cole's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on April 28, 2021.

| Name | Email | Service Sent To: |
|------|-------|------------------|
| Christopher L. Taylor, Employee's Attorney | X | ctaylor@taylortoon.com sreynolds@taylortoon.com |
| Stephen K. Heard, Employer's Attorney | X | skheard@cclawtn.com ealimon@cclawtn.com |

*Penny Shrum*

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fullycompleted Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____ **Employer**

Notice is given that _____ *[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date filestamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____ issued

by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)** (Opposing Party): _____  ☐Employer ☐Employee

Appellee's Address: _____  Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

__ *[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                          RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries       $ _____ per month    Telephone    $ _____ per month

Electricity       $ _____ per month    School Supplies $ _____ per month

Water        $ _____ per month    Clothing    $ _____ per month

Gas         $ _____ per month    Child Care    $ _____ per month

Transportation  $ _____ per month    Child Support    $ _____ per month

Car         $ _____ per month

Other       $ _____ per month (describe: _____ )

10. Assets:

Automobile        $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House        $ _____    (FMV) _____

Other        $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____